IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SONIC INDUSTRIES LLC, a limited liability company, et al.,

Plaintiffs,

v.

ARTHUR J. HALLERAN, JR., an individual, and OKS CAMPBELL LLC, a limited liability company, et al.,

Defendants.

Case No. CIV-16-709-C

MEMORANDUM OPINION AND ORDER

Sonic Industries LLC, Sonic Franchising LLC, and Sonic Industries Services Inc. (collectively, "Plaintiffs" or "Sonic") filed this case alleging breach of contract and unjust enrichment against Arthur J. Halleran, Jr.; OKS Campbell, LLC; OKS Commercial & U, LLC; OKS Beach Place, LLC; OKS Stadium, LLC; and OKS Hialeah Gardens, LLC (collectively, "Defendants" or "OKS"). Defendants answered and brought counterclaims against Plaintiffs, raising questions regarding the choice of law provisions contained in contracts between the parties and alleging various violations of Florida and Oklahoma law. Now before the Court is Sonic's Partial Motion to Dismiss Counterclaims (Dkt. No. 31). OKS has responded and the Motion is now at issue.

This case involves a transaction between Sonic as the franchisor and OKS as the developer and franchisee where OKS obtained the rights to develop twenty new Sonic restaurants and purchase two existing restaurants in Florida. Sonic initiated this case claiming OKS failed to pay all amounts due under the contracts and has therefore been

unjustly enriched by retaining "POP Kits" and other property under the open and unpaid accounts. In its counterclaims, OKS alleges Sonic failed to provide proper financial disclosures in the Franchise Disclosure Documents and made other false representations to OKS regarding profitability and desirability of the restaurants in question, causing significant losses on OKS's investment.

The standard for consideration of motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is set forth in the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and the subsequent decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In those cases, the Supreme Court made clear that to survive a motion to dismiss, a complaint must contain enough allegations of fact which, when taken as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. Id. Thus, the starting point in resolving Sonic's Motion is to examine the factual allegations supporting each claim that the counterclaimants wish the Court to dismiss. The Court will accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). However, conclusory allegations need not be accepted as true. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011).

Governing Law

As a threshold matter, the Court must determine which state's substantive law applies to the counterclaims at issue. Sonic argues Oklahoma law should apply because the

agreements between the parties contained an Oklahoma choice of law clause applicable to the contract claims and because the most significant relationship test yields the result that Oklahoma law should also apply to the tort claims. OKS argues the agreements state Florida law will govern franchise disagreements in addition to Oklahoma law, and has asserted claims under the laws of both states.

When a federal court exercising diversity jurisdiction is faced with a choice of law determination, the court "must apply the choice of law provisions of the forum state in which it is sitting." Shearson Lehman Bros., Inc. v. M & L Invs., 10 F.3d 1510, 1514 (10th Cir. 1993) (citations omitted). In Oklahoma, contract choice of law rules require the court to apply the law of the state (1) chosen by the parties, (2) where the contract was made or entered into, or (3) the place of performance if indicated in the contract. Moore v. Subaru of Am., 891 F.2d 1445, 1449 (10th Cir. 1989) (citations omitted).

Here, there are agreements between the parties containing choice of law clauses. The parties have not challenged the validity of the agreements, only the scope of the choice of law clauses. The choice of law clause contained in the License Agreement states:

> The terms and provisions of this Agreement shall be interpreted in accordance with and governed by the laws of the State of Oklahoma, provided that if the laws of the State of Oklahoma would not permit full enforcement of Section 16 of this Agreement, then the laws of the state in which the Sonic Restaurant is located or Licensee is domiciled shall apply to the extent that any or all of such laws more fully permit enforcement of Section 16 of this Agreement. Notwithstanding the foregoing, the franchise laws or regulations of the state in which the Sonic Restaurant is located, in effect on the original date of this Agreement, shall apply to this Agreement. . . . SONIC and Licensee agree that any and all breaches of this Agreement, including breaches occurring after termination, cancellation, or expiration of this Agreement, shall

> be deemed to have occurred where the corporate headquarters of SONIC are located.

(License Agmt., Dkt. No. 31-1, p. 32) (emphasis added). The plain meaning of the clause states Oklahoma law will govern the Agreement, but if there is no recourse for claims brought under Section 16 (which is not implicated by the counterclaims), then the law of the location of the restaurant will apply. Thus, the franchise laws and regulations of the location of the restaurant will also apply. Restatement (Second) of Contracts § 202 (2016).

Given that Section 16 provides protections to Sonic, it is logical for the parties to draft language allowing licensee protection in the following sentence. The Court finds no need to examine beyond the plain meaning of the agreement between the parties. The Guaranty Agreement (Dkt. No. 31-6, p. 3) contains an Oklahoma choice of law clause and the Development Agreement also contains an Oklahoma choice of law clause (Dkt. No. 31-11, pp. 15-16) and a savings clause electing Florida law as a contingent (Dkt. No. 31-11, p. 11). Because the claims at issue involve the License Agreement, the Court concludes this choice of law provision should apply and OKS will be permitted to assert claims stemming from both Oklahoma and Florida law.

When evaluating tort issues, Oklahoma choice of law rules apply the law of the state with the most significant relationship to the parties. Moore, 891 F.2d at 1448. This test considers "'(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties

occurred.'" Yavuz v. 61 MM, Ltd., 576 F.3d 1166, 1178-79 (10th Cir. 2009) (quoting BancOklahoma Mortg. Corp. v. Capital Title Co., 194 F.3d 1089, 1103-04 (10th Cir. 1999)).

Here, the injured parties, OKS, reside in Florida. The alleged breach and fraudulent acts occurred within Sonic's headquarters, located in Oklahoma. In fact, the parties agreed that "any and all breaches" of the License Agreement would be deemed to have occurred "where the corporate headquarters of SONIC are located." (License Agmt., Dkt. No. 31-1, p. 32.) The fourth factor places Sonic in Oklahoma and Delaware and OKS in Florida. As for the final factor, Sonic states all contracts were issued from the Sonic headquarters in Oklahoma.

OKS makes no counterargument regarding the most significant relationship test, but does state "[w]hile the Sonic Defendants' unlawful conduct may have primarily occurred in Oklahoma, the OKS Plaintiffs were required to perform under the License Agreements in Florida." (Ds.' Resp., Dkt. No. 35, p. 13.) After considering the factors, the Court determines the breach of the covenant of good faith and fair dealing and fraud claims will be subject to Oklahoma law.[1]

Count II – Bad Faith

OKS brings a claim of breach of the implied covenant of good faith and fair dealing, or bad faith, arguing Sonic abused its discretionary authority, failed to exercise its authority in good faith, and the alleged conduct constituted a willful and malicious breach of said duty.

[1] OKS brought its fraud claim only pursuant to Oklahoma law.

Sonic argues the claim must be dismissed because there is no special relationship between the parties and the agreement is merely a commercial contract. According to the choice of law discussed above, Oklahoma law will apply to this issue.

Oklahoma law recognizes an implied covenant of good faith and fair dealing in every contract, but its breach is usually not recoverable as a tort independent from breach of contract. First Nat'l Bank & Trust Co. of Vinita v. Kissee, 1993 OK 96, ¶ 24, 859 P.2d 502, 509. The Oklahoma Supreme Court has recognized an independent bad faith claim when there is a "special relationship" between the parties. A special relationship that will "give[] rise to tort liability for bad faith is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." Embry v. Innovative Aftermarket Sys. L.P., 2010 OK 82, ¶ 7, 247 P.3d 1158, 1160 (citation omitted). Typically, bad faith claims are asserted in the insurance context and the Oklahoma Supreme Court has been reluctant to expand the meaning of special relationship "beyond the insurance field." Id. 2010 OK 82, ¶ 6, 247 P.3d at 1160; compare Hitch Enterprises, Inc. v. Cimarex Energy Co., 859 F. Supp. 2d 1249, 1264 (W.D. Okla. 2012) (dismissing claim based on lessee-royalty owner relationship); Rodgers v. Tecumseh Bank, 1988 OK 36, 756 P.2d 1223, 1225-27 (declining to extend independent tort to commercial loan contracts).

Here, the relationship between the parties is that of franchisor and franchisee. OKS has not offered any facts indicating this is an adhesion contract or that Sonic eliminated its risk in the contract. While Sonic may have had more bargaining power because it is a large

corporation, OKS cannot be said to have had no bargaining power or no choice of terms. The Court finds no indication that the agreements in question were not ordinary commercial contracts. Accordingly, OKS will not be permitted to assert a separate tort in this matter, but the same facts will apply to the breach of contract claim. Because no amendment could cure the deficiencies discussed herein, the bad faith claim must be dismissed with prejudice.

Count III – Fraud

With regard to the third count for fraud, Sonic argues the claim is deficient because it fails to meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b). A fraud claim must "set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof." In re Edmonds, 924 F.2d 176, 180 (10th Cir. 1991) (citations omitted). Rather than requiring "factually or legally valid" allegations or detailed statements regarding fraud, the Tenth Circuit explains "Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are alleged to be responsible." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1253 (10th Cir. 1997) (citation omitted).

Here, the pleadings set out the time as late 2007 (when Halleran was granted development rights), early 2007 (when Halleran was coerced into acquiring two failing restaurants), the time period in which each License Agreement was signed, and prior to the signing (when the Financial Disclosure Documents containing false information were delivered and other misrepresentations regarding investment expectations were made). (Countercl., Dkt. No. 17, pp. 14-17.) The Court finds this satisfies the time requirement.

Next, the counterclaim states the location of the restaurants and territories in question and the place Mr. Ritger is alleged to have visited when he made representations to OKS. (Countercl., Dkt. No. 17, pp. 14, 17.) No other place is material to the allegations. The Court need not recite the alleged contents of the fraudulent statements and actions, but the Court finds them to be sufficient. Finally, the allegations name Mr. Ritger as a representative of Sonic and "Sonic Industries" and "Sonic Defendants" in other places where the company is taking action. The Tenth Circuit does not require the identification of "individual sources of statements . . . when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." Schwartz, 124 F.3d at 1254. Because these allegations are sufficient to provide Sonic with proper notice, the claim will not be dismissed.

Count IV – Violation of the Florida Franchise Act

OKS alleges that Sonic violated the Florida Franchise Act ("FFA") by "intentionally misrepresenting the prospects or chances for success of the Sonic franchises sold to the OKS Plaintiffs." (Countercl., Dkt. No. 17, p. 24.) The allegations further state Sonic knew the Ft. Lauderdale shopping mall location must produce $4,000,000 in revenue to be profitable, but Sonic was also aware no other shopping mall restaurant had produced similar revenue. With this knowledge, Sonic assured OKS the Fort Lauderdale location was financially viable. Relying on Sonic's representations and inaccurate Franchise Disclosure Documents, OKS entered into agreements with Sonic and suffered substantial losses. Sonic argues this claim must fail because the License Agreement expressly disclaimed not only representations

regarding future profitability, but also all oral representations. (Countercl., Dkt. No. 17, pp. 17-18.)

The statute in question states "[i]t is unlawful, when selling or establishing a franchise or distributorship, for any person . . . [i]ntentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship." Fla. Stat. § 817.416(2)(a). To recover under the FFA, OKS must show "'proof of intentional words or conduct by the franchisor, concerning the prospects or chances of success of the enterprise, which were relied upon by the franchisee to his detriment, and which are not in accordance with the facts.'" Hall v. Burger King Corp., 912 F. Supp. 1509, 1529 (S.D. Fla. 1995) (quoting Travelodge Int'l, Inc. v. Eastern Inns, Inc., 382 So.2d 789, 791 (Fla. 1st DCA 1980)). The Court finds OKS has successfully pleaded facts, that when taken as true, state a claim for relief and the claim will not be dismissed.

Count V – Violation of the Florida Deceptive and Unfair Trade Practices Act

OKS alleges that Sonic violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq. To state a claim, OKS must show "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." Dolphin LLC v. WCI Communities, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013) (citation omitted). OKS states that because the FDUTPA adopts any violation of the Federal Trade Commission Act and Sonic failed to comply with the Franchise Rule, the claim must survive a motion to dismiss.

Sonic argues the pleadings do not contain sufficient specificity and the alleged wrongful acts were expressly disclaimed in the License Agreement and cannot be a violation

of the FDUTPA. OKS must plead with particularity according to Fed. R. Civ. P. 9(b).[2] See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002) (stating a "plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'") (citation omitted); see also discussion *supra* Count III (examining time, place, contents, and identity requirements of Rule 9(b)). Contrary to Sonic's argument, the allegations contained in the counterclaim are much more specific than the general "theft" and "embezzlement" allegations in Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc., No. 13-22214-CIV, 2013 WL 6633175, at *5 (S.D. Fla. Dec. 17, 2013) (dismissing FDUTPA claims for failure to state a claim). The claim will not be dismissed for Rule 9(b) reasons.

Next, Sonic argues the License Agreements expressly disclaim all circumstances forming the FDUTPA claim. The Court agrees. Florida courts are in agreement that "a party that signs a contract whose terms contradict the alleged misrepresentations on which he relied is barred from seeking relief pursuant to FDUTPA, as the party did not reasonably rely on the misrepresentation." Zaffrullah v. Countrywide Home Loans, Inc., No. 09-61142-CIV,

---

[2] The Florida courts are split on whether the heightened fraud pleading is required to make out a FDUTPA claim. SIG, Inc. v. AT & T Digital Life, Inc., 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013); Guerrero v. Target Corp., 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012). However, the split is not an issue here because pleadings clearly allege fraud, so the heightened standard will apply. See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd., No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23, 2011) (finding Rule 9(b) applies because plaintiff's complaint described fraudulent conduct).

2010 WL 503074, at *4 (S.D. Fla. Feb. 8, 2010); TRG Night Hawk Ltd. v. Registry Dev. Corp., 17 So. 3d 782, 784-85 (Fla. Dist. Ct. App. 2009) (listing cases). Because no amendment could cure the deficiencies discussed herein, the claim must be dismissed with prejudice.

Count VI – Violation of the Oklahoma Business Opportunity and Sales Act

OKS brings claims pursuant to the Oklahoma Business Opportunity and Sales Act ("OBSA"), alleging Sonic was no longer exempt from certain filing requirements with the Oklahoma Department of Securities when they provided false and misleading information in the Financial Disclosure Documents, or in the alternative, that Sonic failed to deliver the Financial Disclosure Documents. 71 Okla. Stat. § 807(A)(2) (registration procedure requiring the filing of disclosure documents); 71 Okla. Stat. § 803(6)(b) (providing exemption from filing disclosure if disclosures are delivered to purchaser). OKS also claims the same Financial Disclosure Documents violated the OBSA, which outlaws the use of fraudulent or deceitful information "in connection with the offer or sale of any business opportunity." 71 Okla. Stat. § 819.

Sonic argues that OKS pleads alternative facts in an improper manner. However, Oklahoma courts have routinely held that alternative pleading is permissible, even when the presented theories are inconsistent. See Barringer v. Baptist Healthcare of Okla., 2001 OK 29, ¶ 17, 22 P.3d 695, 700; Howell v. James, 1991 OK 47, 818 P.2d 444, 448; 12 Okla. Stat. § 2008(E)(2). Therefore, OKS is permitted to argue in the alternative and no claims will be

dismissed for the sole reason that OKS disputes whether Sonic provided a Financial Disclosure Document.

The Court finds there are outstanding questions of fact regarding whether the Financial Disclosure Document was provided and if so, if it was sufficient. "[Q]uestions of fact may not be decided on a motion to dismiss for failure to state a claim." Am. Home Assurance Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977). Accordingly, the claim will not be dismissed.

Count VII – Violation of the Oklahoma Consumer Protection Act

OKS asserts a claim under the Oklahoma Consumer Protection Act ("OCPA"), 15 Okla. Stat. §§ 751 et seq. Sonic argues the claim must be dismissed because the Federal Trade Commission ("FTC") has authority to regulate franchisors and the OCPA exemption applies, making this claim inapplicable. The OCPA exemption states the Act shall not apply to "[a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States." 15 Okla. Stat. § 754.

OKS points to two cases where the exemption precluded OCPA claims and the regulating authority allowed a private right of action to pursue the same claim. OKS argues there must be a private right of action for the OCPA exemption to apply, but this argument is not supported by the statute or case law. The statute makes no mention of a private right of action as a requirement for the exemption. See id. The fact that a private right of action existed was not material to the holding in Estate of Hicks ex rel. Summers v. Urban East,

Inc., 2004 OK 36, ¶ 32, 92 P.3d 88, 95, where the Oklahoma Supreme Court simply found that because an action was regulated by the Oklahoma Department of Health, the OCPA claim exemption applied. Similarly in Brice v. AT & T Communications, Inc., 2001 OK CIV APP 112, ¶ 14, 32 P.3d 885, 887, as corrected (Aug. 22, 2001), the determination turned on the fact that the Oklahoma Corporation Commission had authority over the issue. In Ward v. Toyota Motor Insurance Services, Inc., No. CIV-11-230-KEW, 2012 WL 1108039, at *3 (E.D. Okla. Apr. 2, 2012) (unpublished) the plaintiff argued the OCPA claim should not be dismissed because no private right of action was available under the FTC or the Oklahoma Used Motor Vehicle and Parts Commission. The court held "the exemption [at § 754] is express and unequivocal. As a result, no reasonable basis exists as a matter of law for the claims." Id.

OKS has not disputed Sonic's proposition that the FTC has authority to regulate Sonic's activity as a franchisor; in fact, OKS has alleged breach of the Franchise Rule. (Countercl., Dkt. No. 17, pp. 13-14.) Because the OCPA exemption makes no requirement of a private cause of action and the FTC regulates the conduct at issue, the claim must be dismissed with prejudice.

CONCLUSION

Accordingly, Plaintiffs' Motion to Dismiss (Dkt. No. 31) is GRANTED in part and DENIED in part. The remaining counterclaims include Count I, breach of contract; Count III, fraud; Count IV, violation of the Florida Franchise Act; and Count VI, violation of the Oklahoma Business Opportunity and Sales Act.

IT IS SO ORDERED this 19th day of January, 2017.

ROBIN J. CAUTHRON
United States District Judge